**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**GILBERT M. HINOJOSA,**

**Plaintiff,**

**v.** **Case No. 24-CV-1153**

**CHRISTOPHER SCHMALING, *et al.*,**

**Defendants.**

---

## DECISION AND ORDER

---

Plaintiff Gilbert M. Hinojosa, who is incarcerated and representing himself, brings this lawsuit under 42 U.S.C. § 1983. Hinojosa was allowed to proceed on a Fourteenth Amendment claim against the defendants for allegedly failing to obtain dental care for him. The defendants filed a motion for summary judgment, which is fully briefed and ready for a decision. (ECF No. 26.) The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 6, 21.)

## PRELIMINARY MATTER

The defendants argue that Hinojosa failed to follow Federal Rule Civil Procedure 56 and Civil Local Rules 7 and 56 when responding to their motion for summary judgment, failing to substantively dispute their proposed findings of fact. (ECF No. 34-2 at 3.)

District courts are entitled to construe *pro se* submissions leniently and may overlook a plaintiff's noncompliance by construing the limited evidence in a light most

favorable to the plaintiff. *See Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). In his response, Hinojosa substantively responds to the defendants' assertions. Additionally, Hinojosa invokes 28 U.S.C. § 1746 in his complaint, which is enough to convert the complaint into an affidavit for purposes of summary judgment. *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017); *Owens v. Hinsley*, 635 F.3d 950, 954–55 (7th Cir. 2011). As such, the court will consider the information contained in Hinojosa's submissions where appropriate in deciding defendants' motion.

## FACTS

At all times relevant, Hinojosa was a pretrial detainee at the Racine County Jail. (ECF No. 27, ¶ 1.) On November 3, 2021, Hinojosa submitted a dental-related medical request through the Jail's kiosk system stating, "I'm having trouble with my tooth it's falling out slowly but it won't stop bleeding." (*Id.*, ¶ 9.) Within 15 minutes of Hinojosa submitting the medical request, medical staff acknowledged receipt of his request and informed Hinojosa that he was scheduled to be seen by medical staff. (*Id.*, ¶ 10.) The defendants assert that, once a prisoner submits a medical request and has been told he would be scheduled for an appointment, "the timing and prioritization of the appointment was within the sole discretion of the medical department." (*Id.*, ¶ 12.) The defendants, all correctional officers, "were not authorized to independently schedule medical or dental appointments, override the medical department's triage and scheduling decisions, or otherwise direct the provision of clinical care." (*Id.*) In short, once the medical department acknowledged receipt of Hinojosa's request, it "constituted the medical department's assumption of responsibility for that inmate's care." (*Id.*)



Case 2:24-cv-01153-WED Filed 09/16/26 Page 2 of 9 Document 35

According to the defendants, if a prisoner informed them of a medical complaint, the correctional staff "were trained to direct inmate medical complaints to the medical department through the kiosk system." (ECF No. 27, ¶ 13.) If a prisoner raised a medical issue verbally to correctional staff, the proper response "was to direct the inmate to submit a kiosk request—not to independently contact the medical department, advocate for expedited scheduling, or take any clinical action." (*Id.*) Only where correctional staff discerned that a prisoner was "experiencing an acute medical emergency" could correctional staff enact emergency medical protocols and directly request medical assistance. (*Id.*, ¶ 14.)

Sometime between November 10 and November 12, 2021, (it is unclear from the record exactly when), Hinojosa extracted his own tooth. (ECF No. 27, ¶ 15.) The defendants note that, between Hinojosa submitting his original request on November 3, 2021, and extracting his own tooth, he did not submit a follow up request regarding his tooth to the medical department via the kiosk. (*Id.*, ¶ 15.) Hinojosa states that he did not submit a follow-up request because Jail policy instructs prisoners not to submit multiple requests about the same issue in order to be seen faster. (ECF No. 33 at 1-2.)

Hinojosa alleges that, before pulling out his tooth, he notified all of the defendants of his dental issue and asked them to "call down to Medical," but he was never seen by the medical department.[1] (ECF No. 9 at 7.) He states that "for roughly about a week or a week and a half I continued to ask staff for help C.O.'s and nurses at med pass and at

[1] The dates in the amended complaint do not match the dates in the defendants' proposed findings of fact, but the dates in the proposed findings of fact correspond with the medical records, so the court will use the dates in the proposed findings of fact.

CO's rounds, showing them that my face is swollen and my tooth wouldn't stop bleeding." (ECF No. 33 at 3.)

The defendants state that, whenever Hinojosa complained about his tooth pain, they told him he was on the list to be seen by the medical department and/or that they would look into it. (ECF No. 27, ¶¶ 19, 25.) Hinojosa states that the defendants, if they learn that a prisoner has a medical issue that requires medical attention prior to the next scheduled medical appointment, pursuant to Jail policy they are required to "contact the Jail nurse if he or she is on duty (or other designated Jail health care staff member), either in person or by telephone, to advise him or her of the [medical situation]." (ECF No. 33 at 2-3.) Hinojosa does not dispute that he pulled his own tooth because he had yet to be seen by the medical department. (*Id.*)

It is undisputed that Hinojosa "applied deliberate force" to remove his tooth, and there is no evidence in the record that Hinojosa informed anyone he was going to perform a self-extraction or that his dental situation was worsening to the point where he felt he had to pull his tooth. (ECF No. 27, ¶ 17.) After he pulled his tooth, Hinojosa did not request a medical appointment for follow up care. (*Id.*, ¶ 18.) Hinojosa also did not submit any medical request for dental care for the remainder of his stay at the Jail, from November 12, 2021, through May 23, 2023. (*Id.*, ¶ 26.) The only requests related to Hinojosa's tooth were requests to obtain the tooth to be used as evidence in his court case. (*Id.*, ¶ 28.)

Once Hinojosa transferred to a different correctional facility in May 2023, he received an x-ray that "confirmed the tooth had been completely removed with nothing

remaining in the socket, and no further treatment was required or recommended for the extracted tooth." (*Id.*, ¶ 30.) There is no evidence that Hinojosa experienced "oral pain" or "reported [an] ongoing dental condition related to the self-extraction." (*Id.*, ¶ 31.) At his deposition on April 29, 2026, Hinojosa stated "that, other than occasionally avoiding heavy chewing on that side of the mouth, the self-extraction has had no lasting impact on him." (*Id.*, ¶ 33.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific

facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

**ANALYSIS**

Hinojosa claims that the defendants violated his Fourteenth Amendment rights when they failed to contact the Jail's medical department regarding his dental issue.

To succeed on a claim under the Fourteenth Amendment's due process clause, a plaintiff must show that (1) "he suffered from an objectively serious medical condition" and (2) the "staff's response to it was objectively unreasonable." *Williams v. Ortiz*, 937 F.3d 936, 942-943 (7th Cir. 2019). To assess objective unreasonableness, the "standard requires courts to focus on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable." *McCann. Ogle Cty. Ill.,* 909 F.3d 881, 886 (7th Cir. 2018). A plaintiff must also show that the defendants objectively "acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of [his] case." *Id.*

While it is unclear as to whether Hinojosa suffered an objectively serious medical condition, the court does not have to consider that question because it is clear that no reasonable jury could conclude that the defendants acted with objective

unreasonableness. Hinojosa has not demonstrated that any of the defendants were aware that his dental issue had worsened between the time he first submitted his medical request and the time he was scheduled to be seen by the medical staff. There is no evidence in the record, for instance, that Hinojosa informed any of the defendants that his tooth had loosened or that he was planning on extracting the tooth himself. As such, the defendants were entitled to defer to the medical department regarding scheduling and treating his dental issue. *See Burks v. Raemisch,* 555 F.3d 592, 595 (7th Cir. 2009) ([p]ublic officials do not have a free-floating obligation to put things to rights . . . .[correctional staff] is entitled to relegate to the prison's medical staff the provision of good medical care.")

Hinojosa argues that the defendants should have known that he was experiencing a worsening medical condition that required attention prior to his scheduled appointment, and they violated Jail policy by not contacting the Jail nurse. As discussed above, Hinojosa presents no evidence demonstrating that the defendants, in fact, knew that he had a medical condition requiring more immediate care. Also, even if the defendants violated Jail policy, "[s]ection 1983 protects against 'constitutional violations, not violations of . . . departmental regulation and . . . practices[.]'" *Estate of Simpson v. Gorbett*, 863 F.3d 740, 746 (7th Cir. 2017) (quoting *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003)).

Hinojosa also has not demonstrated that he suffered any lasting injury or prolonged pain caused by a delay in treatment, which carries weight when considering whether in the totality of the circumstances the defendants' actions were reasonable.

"A delay in medical treatment may be objectively unreasonable 'if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain.'" *Scott v. Dart*, 99 F.4th 1076, 1089 (7th Cir. 2024) (quoting *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)). There is no evidence in the record indicating that Hinojosa's dental issue was exacerbated by the defendants not intervening on his behalf with the Jail medical staff.

Because Hinojosa fails to demonstrate the defendants were aware that his dental condition had worsened or that he suffered injury from their lack of action, no reasonable factfinder could conclude the defendants acted with objective unreasonableness. Summary judgment is granted in their favor.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is granted. The defendants also argued that they were entitled to qualified immunity but, because the court finds in their favor on the merits, it does not need to address the qualified immunity argument. Because there are no remaining claims, the case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment (ECF No. 26) is **GRANTED.**

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court

a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 16th day of September, 2026.

BY THE COURT

William E. Duffin

WILLIAM E. DUFFIN
United States Magistrate Judge